**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| FRANK RODAS | * | |
| Plaintiff | * | |
| v. | * | Civil Action No.: 1:22-cv-02601-ABA |
| FOUNTAINEBLEAU CORP. d/b/a CLARION RESORT FOUNTAINBLEU HOTEL, *et al.* | * * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff, through undersigned counsel, hereby submits this opposition to Defendants' motion for summary judgment, for the reasons outlined below.

> */s/ Paul D. Bekman*
> PAUL D. BEKMAN (00019)
> bekman@mdtrialfirm.com
> BEKMAN, MARDER, HOPPER, MALARKEY & PERLIN, LLC
> 1829 Reisterstown Road, Suite 200
> Baltimore, Maryland 21208
> (410) 539-6633
>
> ***Attorneys for Plaintiffs***

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

STATEMENT OF FACTS ..........................................................................................................1

SUMMARY JUDGMENT STANDARD ....................................................................................5

ARGUMENT.................................................................................................................................6

    I.      Mr. Rodas did not require expert testimony for his simple negligence claim…………………………………………………………………….…………6

    II.     The unreasonable and dangerous condition of the bathtub was not open and obvious and Mr. Rodas did not assume the risk of his injuries………………………………………………………………………11

CONCLUSION...........................................................................................................................16

CERTIFICATE OF SERVICE ................................................................................................17

## INTRODUCTION

Defendants' motion asked this Court to find that: (1) Mr. Rodas required expert testimony for his simple negligence claim that Defendants failed to exercise reasonable and ordinary care in ensuring that the hotel bathtub was safe for use; and (2) any defects in the bathtub were "open and obvious," and, relatedly, that Mr. Rodas assumed the risk of his injuries. As explained below, however, Defendants' motion is not legally accurate, and demanded that this Court improperly invade the province of the jury to adjudicate factual issues in this straightforward negligence action. Therefore, this Court should deny Defendants' motion for summary judgment.

## STATEMENT OF FACTS

In June of 2020, Plaintiff Frank Rodas ("Mr. Rodas") and his now-wife, Karen Selman ("Ms. Selman"), booked a two-week stay at the Clarion Resort Fontainebleau Hotel ("Clarion") in Ocean City, Maryland. *See* Deposition of Karen Selman at *8-9, 12, 14, attached as **Exhibit 1**. Mr. Rodas and Ms. Selman had stayed together at the Clarion in a cabana room every year since 2008 for their annual summer vacation.[1] *Id.* at *9; *see also* Deposition of Frank Rodas at *18-19, attached as **Exhibit 2**. The Clarion had 15 floors and 250 rooms, but only seven (7) cabana rooms. *See* Deposition of Mark Elman at *12-13, attached as **Exhibit 3**. The cabana rooms were the highest rated rooms at the Clarion and functioned as the equivalent of a suite. *Id.* at *13. These two-floor cabana rooms allowed for direct entry to the indoor pool, and contained a half bathroom on the first floor, and a full bathroom, with a tub/shower combination, on the second floor. *Id.* at *13; **Exh. 1** at *16-17, 19; **Exh. 2** at *20, 25-26.

Mr. Rodas and Ms. Selman lived in New Jersey where many COVID restrictions were still in place in June of 2020. *See* **Exh. 1** at *13. The Clarion had reopened right after Memorial Day

---

[1] Ms. Selman had stayed in a cabana room at the Clarion annually since 1989. *Id.* at *10.

weekend. *See* **Exh. 3** at *20. When Ms. Selman booked the vacation at the Clarion by phone she was told by the Clarion staff that the hotel restaurants were open, that social distancing of six feet was required, and that masks were mandatory indoors. *See* **Exh. 1** at *12-13. She was not informed that housekeeping services at the hotel would be limited in any way. *Id.* at *13-14.

Mr. Rodas and Ms. Selman checked into the Clarion on June 23, 2020. *See* **Exh. 1** at *15; **Exh. 2** at *23. Due to the pandemic, the Clarion had evidently instituted a policy that there would be no daily housekeeping service provided to clean rooms after check-in during the length of a guest's stay. *See* **Exh. 3** at *21, 22-23. Although the Clarion staff was to advise guests of this policy during check-in, *see id.* at *26-27, Ms. Selman testified that she and Mr. Rodas were not told about that policy at check-in and that there were no signs at the front desk or in the room noting that policy. *See* **Exh. 1** at *15-16, 25-26; **Exh. 2** at *24-25.

Mr. Rodas and Ms. Selman were assigned to Room 206 in the cabana area of the Clarion. *See* **Exh. 3** at *32. That room had last been cleaned on June 21, 2020, when the prior guests checked out. *Id.* at *32-33. But Mr. Rodas and Ms. Selman noticed that the bathtub was dirty. Specifically, Mr. Rodas testified that "the bathroom wasn't … clean" and "[i]t was filthy." *See* **Exh. 2** at *26-28. He testified further that: "[The bathtub] was dirty. It was sandy. It was black. It was just filthy. It was disgusting." *Id.* at *30; *see also id.* at *88 (stating further that the bathtub had "like, black dirt" and that it was "[s]andy"). Ms. Selman testified that she "noticed that the tub was filthy" with a substance that had a "brownish color, gray." *See* **Exh. 1** at *21. Mr. Rodas believed that the substance in the bathtub was there from the prior guest and that the bathtub had not been cleaned properly. *See* **Exh. 2** at *89.

Although the Clarion had adopted an internal policy that there would be no daily housekeeping service provided, there evidently were staff members assigned to address and

2

resolve specific in-room cleaning or maintenance requests lodged by guests. *See* **Exh. 3** at *27-28. Ms. Selman called the front desk to report the dirty bathtub on the morning of June 24, 2020, and requested for the bathtub to be cleaned. *See* **Exh. 1** at *21-22. She was told that the Clarion staff would get back to her, and she went to the pool for the day. *Id.* at *22. When Mr. Rodas and Ms. Selman returned to the room later in the day, the bathtub had still not been cleaned. *Id.* Ms. Selman went to the front desk to complain. *Id.* She told the front desk that the bathtub was filthy and that she would not use a dirty bathtub especially during the pandemic, as she "was afraid" to be "near any kind of germs" with the spread of COVID-19. *Id.* at *24, 32. She was told, however, that the room was cleaned before they arrived and that it would not be cleaned again until they departed two weeks later. *Id.* at *23. She was told that due to the pandemic the Clarion staff would not be entering any of the rooms. *Id.* She asked to be moved to a different room, but was told that there were no other cabana rooms available. *Id.* She asked to speak to a manager, but was not afforded the ability to do so. *Id.* at *25. She complained several more times over the next few days, but was not offered any solution to address the filthy bathtub over the two-week stay. *Id.* at *24-25.

From the date of check-in, June 23, 2020, through the date of the incident, June 29, 2020, neither Mr. Rodas or Ms. Selman used the bathtub or shower in any way. *Id.* at *26; **Exh. 2** at *32-33. They did not run water into the tub for any reason, nor did they used the tub to hang swimsuits or towels. *See* **Exh. 1** at *26-27, 29; **Exh. 2** at *32-34, 36, 38-39, 89. There was an exposed public shower near the pool area that could be used to rinse themselves off, and Ms. Selman also went to the beauty parlor to have her hair washed separately. *See* **Exh. 1** at *27.

On the date of the incident, the room had not been cleaned for eight (8) days, from June 21, 2020, through June 29, 2020. *See* **Exh. 3** at *32-34, despite numerous complaints to the Clarion staff about the filthy bathtub. Both Mr. Rodas and Ms. Selman testified that there were no bath

mats inside or outside the bathtub, and that in their recollection the bathtub had a smooth surface.² *See* **Exh. 2** at *31-32; **Exh. 1** at *30-31. Mr. Rodas testified that while he knew in general that a bathtub without a textured surface is more slippery when wet than one with a textured surface, he was "not a bathtub expert" and that it did not occur to him that this particular bathtub was unsafe or dangerous in any way. *See* **Exh. 2** at *30-32, 68. Ms. Selman testified that she did not know whether the bathtub was slippery due to the filthy condition of the tub, she just knew that it was dirty, and reported the same to the front desk on numerous occasions.³ *See* **Exh. 1** at *28, 31-32. She testified that the discussions between her and Mr. Rodas were that the bathtub was "disgusting." *Id.* at *28.

On June 29, 2020, after five (5) days without a true shower, Mr. Rodas was "hot … sweating and … dirty" and "just needed to clean [himself]," *see* **Exh. 2** at *38, even considering the filthy condition of the bathtub. He put one leg in the bathtub and grabbed onto the wall with one hand, out of habit. *Id.* at *40-41. As he got in the bathtub, turned on the water, and let go of the wall, he felt the dirt and sand on the bottom of the bathtub and the tub felt slippery. *Id.* at *40, 42. That same instant his left foot suddenly slipped out from under him and his feet hit the tub stopper, ripping the tub stopper out of the drain. *Id.* at *40-42. His head contacted the wall and he fell between the tub and the toilet. *Id.* at *40. Mr. Rodas suffered severe and permanent injuries due to the incident. *Id.* at *42-43, 53-55, 69-72, 75-75-81, 84-87.

---

² Defendants' then-general manager, Mark Elman, testified that all bathtubs in the Clarion had safety treads embedded in the tub, although he was not sure if the particular safety treads in the bathtub in Room 206 were visible that day. *See* **Exh. 3** at *47. He testified that bathmats were not provided to each room, but could be made available on request. *Id.* at *47-48.

³ Although Plaintiff Frank Rodas's Answer to Interrogatory No. 2 stated that "Ms. Selman noticed the condition of the tub and called the hotel to complain that it was dirty and slippery," *see* **Exh. 2** at *52, Ms. Selman herself testified that her calls and complaints to the front desk were only that the bathtub was dirty, not that it was slippery. *See* **Exh. 1** at *28.

Mr. Rodas and Ms. Selman took photos of the condition of the tub following the incident. *See* Photos of bathtub, attached as **Exhibit 4**.

Further facts relevant to specific legal arguments will be incorporated in the appropriate sections below.[4]

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Cox v. Cty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001) (citations omitted). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, "the evidence must be viewed in the light most favorable to … the non-moving party." *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *see also Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013) (citation omitted).

---

[4] Although Defendants did not appear to argue this point in their motion, it bears mentioning, in case raised by Defendants in their Reply, that an incident report written and signed by Clarion agents and employees based on a phone conversation with Mr. Rodas following the incident documented that Mr. Rodas supposedly told them that the tub stopper was damaged when he was attempting to fix it and that the he fell because the bathtub was slippery. *See* **Exh. 3** at *35, 39-40, 45-46. While there are obvious issues with the trustworthiness of this self-serving and self-prepared incident report, Mr. Rodas testified that the report was not accurate, as he never said he was trying to fix the tub stopper, and that he did not know that the bathtub was slippery prior to the incident. *See* **Exh. 2** at *61-62. While the incident report did not mention that the bathtub was dirty, both Mr. Rodas and Ms. Selman testified as to the condition of the bathtub and the complaints of the same to the Clarion staff prior to the incident, *see* **Exh. 1** at *21-25, 28, 31-32; **Exh. 2** at *26-28, 30, 88, and the photos taken follow the incident document the filthy nature of the bathtub to some extent as well, *see* **Exh. 4**.

**ARGUMENT**

Defendants admitted that Mr. Rodas was their invitee at the Clarion. *See* Def. Memo. at *8. Defendants conceded that they had a duty to use reasonable and ordinary care to keep the Clarion safe for Mr. Rodas, and to protect Mr. Rodas from injury caused by an unreasonable risk which he could not discovery by exercising reasonable care for his own safety. *Id.* Defendants also did not argue that that they had no knowledge of the dangerous condition—the foreign substance—that was specifically reported to the Clarion staff a number of times prior to the incident and that the Clarion staff consciously decided not to address in any way. Defendants' only arguments were that Mr. Rodas required expert testimony on liability issues to prove a simple negligence claim that was well within the common knowledge of the average person, and that the unreasonable and dangerous condition of the bathtub was open and obvious such that Mr. Rodas assumed the risk of his injuries. Because these contentions are legally erroneous, as well as factually incorrect, especially when viewing the evidence and inferences therefrom in the light most favorable to Mr. Rodas, this Court should deny Defendants' motion.

**I.     Mr. Rodas did not require expert testimony for his simple negligence claim**

It is well-established that "[e]xpert testimony is *required* only when the subject of the inference to be drawn by the jury is so particularly related to some science or profession that it is beyond the ken of the average layman." *Steamfitters Local Union No. 602 v. Erie Ins. Exch.*, 233 A.3d 59, 78 (Md. 2020) (citations omitted) (emphasis in original). "Expert testimony is *not* required for matters that would be within the common knowledge of an average person." *Id.* (citations omitted) (emphasis in original).

It is critical to specify Mr. Rodas's claims of negligence in this case. Mr. Rodas alleged that Defendants breached their duty to him because they: (1) failed to inspect the bathtub; (2) failed to maintain the bathtub free from defects; (3) failed to provide safety strips, non-skid strips or a

6

bath mat in the tub; (4) failed to warn Plaintiff of the defective condition of the bathtub; and (5) failed to provide a safe and adequate bathtub. *See* Def. Memo. at *7.

      Mr. Rodas provided evidence that he and Ms. Selman noticed that the bathtub was filthy, containing a sandy, dark-colored substance. *See* **Exh. 1** at *21; **Exh. 2** at *26-28, 30, 88; **Exh. 4**. Ms. Selman complained to the Clarion staff multiple times over a five-day period about the foreign substance in the bathtub, *see* **Exh. 1** at *21-25, 32, and the issue was not addressed, even though it should have been under the Clarion's stated policy during that stage of the pandemic, *see* **Exh. 3** at *27-28. On the date of the incident, the room had not been cleaned for eight (8) days, from June 21, 2020, through June 29, 2020, *see* **Exh. 3** at *32-34, despite numerous complaints to the Clarion staff about the filthy bathtub. Even so, the Clarion staff informed them that the room was not going to be cleaned for the rest of their two-week stay and that no alternative accommodations would be provided. *See* **Exh. 1** at *23-25. After five (5) days without a proper shower, Mr. Rodas was understandably hot and sweaty and needed to use the only shower provided to him by the Clarion, *see* **Exh. 2** at *38, even considering the filthy condition of the bathtub. Mr. Rodas and Ms. Selman had not used the bathtub in any way from the time that they checked in until the date of the incident. *See* **Exh. 1** at *26-27, 29; **Exh. 2** at *32-34, 36, 38-39, 89. There were no bath mats inside or outside the bathtub, and in the recollection of Mr. Rodas and Ms. Selman, although disputed by Defendants, the bathtub had a smooth surface. *See* **Exh. 2** at *31-32; **Exh. 1** at *30-31. As Mr. Rodas entered the bathtub, turned on the water, and let go of the wall which he held out of habit, he felt the dirt and sand on the bottom of the bathtub and the tub felt slippery. **Exh. 2** at *40-42. <u>That same instant</u> his foot suddenly slipped out from under him. *Id.*

      Mr. Rodas testified that he did not know that the bathtub was slippery or dangerous in any way before the incident. *Id.* at *30-32, 68. Whether the evidence presented by Mr. Rodas about

the condition of the bathtub, the conversations with the Clarion staff, any knowledge possessed or actions taken by Mr. Rodas prior to or during the incident, and the cause of the injury, is to be credited, or whether Defendants' different interpretations of the very same facts should instead be believed, lies squarely with the jury. Mr. Rodas has presented sufficient evidence to place these issues before a jury, and any inferences needed to be drawn by the jury from these facts do not require complex scientific knowledge or an understanding of a highly-specialized profession. It is well within the ken of the average layman to understand that Defendants owed a duty of reasonable and ordinary care to Mr. Rodas, their invitee, to properly clean his in-room bathtub between guests and to respond to the multiple complaints over several days regarding that foreign substance according to the hotel's admitted policy at that time. It is also well within the ken of the average layman to comprehend that a bathtub coated with a foreign substance <u>can</u> be slippery, and unreasonably dangerous, especially when no bathmat or safety strips have been otherwise provided. Finally, it is also within the ken of the average layman to determine that Defendants' failures in these areas breached their duty to Mr. Rodas.

Maryland courts have permitted cases involving more complicated professional areas to proceed even without expert testimony. *See, e.g.*, *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs.*, 674 A.2d 106, 117, 127 (Md. App. 1996) (citation omitted) (reversing the trial court's grant of summary judgment in a condominium construction case on the basis that expert testimony was required "to prove a defect with respect to excessive noise and vibration from the HVAC system," and stating that: "Many lay persons have lived in apartments or stayed in hotel or motel rooms, and they would know that 'constant' loud noise and vibrations from mechanical devices is out of the ordinary. As a matter of common knowledge, the kind of noise and vibration that results in 'irrepressible annoyance,' 'interrupted … sleep,' and renders a room 'uninhabitable,'

raises at least an inference of defective construction or design."); *Asmussen v. CSX Transp., Inc.*, 237 A.3d 908, 926 (Md. App. 2020) (citations omitted) (citing with approval cases from the Sixth and Seventh Circuits that held that "a jury may be able to conclude without the aid of expert testimony that a railroad has been negligent in failing to lay ballast, creating the muddy trackside conditions that cause an employee to slip and fall," and "no expert would be needed for a jury to find that a railroad was negligent in failing to provide adequate ventilation or proper equipment to employees tasked with cleaning boilers"); *Steamfitters Local Union No. 602*, 233 A.3d at 78-79 (citations omitted) (holding that because "[c]ertain dangerous conditions that create the foreseeable risk of fire are well known to ordinary people and are a matter of common knowledge … [i]t was within the jury's province to apply its common knowledge and experience to determine what constituted reasonable care to guard against the risk of fire and whether [the owner of a commercial property] breached that duty" to its neighbor, without the need for expert testimony). There is no special hotel or pandemic expert witness requirement as Defendants seemed to suggest. *See* Def. Memo. at *11-12. It is squarely for the jury to determine whether Mr. Rodas has proved his negligence case under the evidence offered, and no expert witness on liability issues was necessary.

Still, Defendants contended that Mr. Rodas required expert testimony because "the average juror did not possess the knowledge necessary to determine what constitutes 'reasonable care' for a hotel owner/operator with regard to the alleged failures to act for which Plaintiff seeks to hold Defendants liable." *See* Def. Memo. at *10. In support of their position, Defendants cited two cases from foreign jurisdictions. These cases, however, do not affect Maryland law, and are not helpful.

In the first, an unreported opinion, the United States District Court for the District of Columbia held that the plaintiff there required expert testimony to prove his negligence claims arising out of his fall in a hotel shower. *Haney v. Marriott Int'l Inc.*, 2007 U.S. Dist. LEXIS 74872

9

at *11, 2007 WL 2936087 (D.D.C. Oct. 9, 2007) (unpublished opinion). But *Haney* is very different both factually and legally. *First*, the allegations in *Haney* necessitated "proof of compliance with suitable ASTM[5] standards and the appropriate coefficients of friction for bathtub surfaces," which could be considered issues that required expert testimony. *Id.* at *16. Those complex issues are not part of the allegations in this case. *Second*, the plaintiff in *Haney* did not "put forward <u>any</u> evidence—in the form of deposition testimony, affidavits, or interrogatory responses—concerning the physical characteristics of the bathtub on the date of the accident," and he did not explain "via evidence what condition the tub <u>should</u> have been in had defendant exercised due care." *Id.* at *11 (emphasis in original). Plaintiff did so here in the form of discovery responses, deposition testimony, and photographs about the condition of the bathtub prior to the incident and the specific and multiple complaints to management to clean the bathtub from the foreign substance that he alleged caused his fall in the shower, facts not present in *Haney*. *Third*, the defendant in *Haney* provided a report from an expert who evaluated and tested the "slip resistance" of the bathtub in question and opined about ASTM standards and particular static coefficients of friction. *Id.* at *13-14. Defendants here did not designate any expert witness or provide any expert report about the bathtub or about what constituted reasonable care for a hotel under the circumstances. *Fourth*, and most detrimental to any lessons from *Haney*, the *Haney* Court specified that the plaintiff's assumption that "because showering is a common everyday task, his mere allegation that this particular bathtub was unreasonably slippery is sufficient to establish the appropriate duty of care," was "mistaken as a matter of District of Columbia law." *Id.* at *11-12. According to *Haney*, the District of Columbia Court of Appeals has followed a

---

[5] ASTM is "an international standards developing organization that advances and publishes technical standards for … slip-resistant bathing facilities." *Id.* at *14.

10

"trend" to require a plaintiff "to present expert testimony regarding standards of care for relatively common situations." *Id.* at *12. Defendants have not shown that Maryland law follows any such trend, and, as demonstrated by the partial list of cases cited above, Maryland law does not in fact do so.

In the second, the intermediate Georgia Court of Appeals affirmed the trial court's grant of summary judgment to a hotel when the plaintiff's fall in the bathtub was only due to "the combination of water and soap, which [the plaintiff] admittedly was using to lather her body." *Leavins v. Nayan Corp.*, 810 S.E.2d 324, 328 (Ga. Ct. App. 2018). *Leavins* does not move the needle either. *First*, the *Leavins* Court did not set a requirement in Georgia to provide expert testimony to be able to prevail in any and all hotel bathtub slip and fall cases. It instead stated that this specific plaintiff provided no concrete evidence that the bathtub prevented a hazard, and observed that she provided no expert testimony either. *Second*, this case is factually very different than *Leavins*. Here, Mr. Rodas provided discovery responses, deposition testimony, and photographs about the condition of the bathtub prior to the incident and the specific and multiple complaints to management to clean the bathtub from the foreign substance that he alleged caused his fall in the shower.

Summary judgment is not appropriate because there is simply no expert requirement in Maryland under the law and facts presented.

**II.      The unreasonable and dangerous condition of the bathtub was not open and obvious and Mr. Rodas did not assume the risk of his injuries**

Defendants acknowledged that "[w]hether a defect is open and obvious is typically a question for the factfinder." *See* Def. Memo. at *9; *see also Duncan-Bogley v. United States*, 356 F. Supp. 3d 529, 540 (D. Md. 2018) (citing *C&M Builders, LLC v. Strub*, 22 A.3d 867, 885 (Md. 2011)). Defendants also recognized that the question of whether a plaintiff assumed the risk of his

11

or her injuries is typically for the jury to decide. *See* Def. Memo. at *14; *see also Hooper v. Mougin*, 284 A.2d 236, 239 (Md. 1971). Yet, Defendants insisted that the facts of this required a ruling in their favor on factual questions related to breach of duty as a matter of law. But this could not be more incorrect.

Here, there are disputed material facts and inferences from those facts on which a jury could determine that the unreasonable and dangerous condition of the bathtub was <u>not</u> open and obvious and that Mr. Rodas did <u>not</u> assume the risk of his injuries as a matter of law. From the date of check-in, June 23, 2020, through the date of the incident, June 29, 2020, neither Mr. Rodas or Ms. Selman used the bathtub or shower in any way. *Id.* at *26; **Exh. 2** at *32-33. They did not run water into the tub for any reason, nor did they used the tub to hang swimsuits or towels. *See* **Exh. 1** at *26-27, 29; **Exh. 2** at *32-34, 36, 38-39, 89. Mr. Rodas testified that while he knew in general that a bathtub without a textured surface is more slippery when wet than one with a textured surface, he was "not a bathtub expert." *See* **Exh. 2** at *31, 68. Most importantly, Mr. Rodas testified that he did not know that the bathtub was slippery or dangerous in any way before the incident.[6] *Id.* at *30-32. And this Court cannot disregard the uncontroverted facts that Defendants owed a duty of reasonable care as an innkeeper to provide Mr. Rodas with a functional bathtub to wash himself during his two-week stay at the Clarion, and that Defendants did not provide Mr. Rodas with a functional bathtub or a suitable alternative despite many complaints to the Clarion, *see* **Exh. 1** at *21-25, 32, and contrary to the Clarion's own stated policy during the pandemic, *see*

---

[6] Ms. Selman testified that she did not know whether the bathtub was slippery due to the filthy condition of the tub, she just knew that it was dirty, and reported the same to the front desk on numerous occasions. *See* **Exh. 1** at *28, 31-32. She testified that the discussions between her and Mr. Rodas were that the bathtub was "disgusting." *Id.* at *28.

12

**Exh. 3** at *27-28, leaving Mr. Rodas with no choice than to finally attempt to use the bathtub on the sixth day of his stay. This clear testimony cannot be discounted on summary judgment.

Simply put, Defendants' motion missed a crucial step. Defendants did not, and could not, show that Mr. Rodas knew that the bathtub was slippery and unreasonably dangerous prior to the incident. Instead, Defendants attempted to cobble together bits and pieces of evidence to infer that Mr. Rodas in fact knew that the bathtub was slippery and unreasonably dangerous prior to the incident and proceeded in the face of a known danger. *See* Def. Memo. at *13, 15-17. Defendants argued that this Court should grant summary judgment on these factual questions because it should deduce: (1) from Mr. Rodas's general knowledge that a bathtub, especially one with a smooth bottom, could possibly be slippery, that he knew this bathtub was slippery on the date of the incident even though he testified to the contrary, *see id.* at *30-32; (2) from the fact that Mr. Rodas grabbed the wall prior to the incident that he knew that this bathtub was specifically slippery, and should discard his uncontroverted testimony that he always grabbed the wall with his hand when he entered a shower, *see id.* at *41; (3) that he slipped some amount of time after entering the bathtub, once he knew the bathtub was actually slippery, rather than as he testified that he slipped before he had the chance to register that the bathtub was slippery, *see id.* at *40-42; Defendants insist that this Court stack one implication on top of another to find in their favor. However, these disputed issues and inferences of fact, along with the facts relied on by Mr. Rodas, must be interpreted in Mr. Rodas's favor on summary judgment, and are ultimately for the jury to decide.

Defendants cited *Durham v. MGM Nat'l Harbor, LLC*, 2023 U.S. Dist. LEXIS 133600, 2023 WL 4867515 (D. Md. Jul. 31, 2023) (unpublished opinion), as a case where a plaintiff slipped in a casino restroom and the Court found for the defendants on summary judgment because while she presented evidence of a dangerous condition the risk was open and obvious. But *Durham* is

13

readily distinguishable from this case. In *Durham*, the plaintiff testified that she "saw a worker with a mop and bucket mopping the floor with water … in front of her but still stepped onto the wet area and fell." *Id.* at *11. This was held to be an open and obvious risk because of the clear indicia presented with no other conclusion for the plaintiff to properly draw other than there was a wet and slippery floor. The *Durham* Court reasoned that the "wet floor" sign that the plaintiff argued for would not have given her any more information than what she already knew. *Id.* Here, Mr. Rodas was presented with no such clear signs to indicate the unreasonable and dangerous condition of the bathtub. The instant case is more similar to another case cited by *Durham*, *Underdown v. Speedway, LLC*, where the United States District Court for the District of South Carolina denied summary judgment for a slip and fall case in a store because the "[p]laintiff testified that he never saw a person mopping the floor prior to the fall, he never saw any wet floor signs, and the [p]laintiff only discovered the wet floor when he fell." 2019 U.S. Dist. LEXIS 227859 at *6, 2019 WL 8014433 (D.S.C. Sept. 3, 2019) (unpublished opinion).

Lastly, Defendants claimed that "though Maryland courts have not specifically addressed the issue of whether a slippery bathtub is an open and obvious condition, other courts considering the issue have so concluded." Def. Memo. at *14. *First*, the three cases cited by Defendants, *Jones v. Abner*, 335 SW.3d 471 (Ky. App. 2011), *Kutz v. Koury Corp.*, 377 S.E.2d 811 (N.C. App. 1989), and *Dempsey v. Alamo Hotels, Inc.*, 418 P.2d 58 (N.M. 1966), *overruled on other grounds by*, *Williamson v. Smith*, 491 P.2d 1147 (N.M. 1971), all discussed the applicability of the open and obvious doctrine in cases where the plaintiffs alleged that the slick, bare mixture of water and soap from their own lather caused them to slip in the bathtub, as there . Those cases did not address whether the open and obvious doctrine applied to cases in which the plaintiff provided evidence that a foreign substance left by the hotel was present in the bathtub at the time of the fall, as was

14

the case here. *Second*, Defendants' broad statement tells only half of the story. In *Wotzka v. Minndakota Ltd. P'ship*, the Supreme Court of North Dakota stated that courts around the country were in fact conflicted as to whether a slippery hotel bathtub due to water and soap is considered an open and obvious risk. 831 N.W.2d 722, 726 (N.D. 2013). The *Wotzka* Court cited the *Jones* and *Kutz* cases mentioned by Defendants, but then cited *Wells v. Howard*, 439 P.2d 997, 998 (Colo. 1989) and *Gunderson v. Nolte*, 456 P.2d 282, 284 (Mont. 1969) to the contrary, concluding that "[w]e agree with the Supreme Court of Montana that whether a hotel is negligent in failing to provide a safety device in a shower is a question of fact." *Id.* at 728. Furthermore, the United States District Court for the Southern District of West Virginia in *McNeilly v. Greenbrier Hotel Corp.* specifically pointed out the differing conclusions reached by courts around the country as to whether a slippery hotel bathtub due to water and soap is considered an open and obvious risk, citing to both *Jones* and *Wotzka*. 16 F. Supp. 3d 733, 738-39 (S.D. W. Va. 2014). And the *McNeilly* Court held "the approach taken by the North Dakota court to be more in keeping with the law and precedent regarding negligence in West Virginia."[7] *Id.* at 739.

Whether the unreasonable and dangerous condition of the bathtub should be considered an open and obvious risk such that Mr. Rodas assumed the risk of his injuries, is clearly a question for the jury. The evidence presented by Mr. Rodas, and inferences therefrom that must be interpreted in the light most favorable to him, dictate that this question cannot be decided on summary judgment as a matter law.

---

[7] The *McNeilly* Court pointed out in a footnote that West Virginia had recently abolished the open and obvious doctrine, but it did not base its rejection of *Jones* and acceptance of *Wotzka* simply on that idea. *Id.* at 738-39 & n.5.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motion for summary judgment.

                               */s/ Paul D. Bekman*
                               PAUL D. BEKMAN (00019)
                               bekman@mdtrialfirm.com
                               BEKMAN, MARDER, HOPPER, MALARKEY & PERLIN, LLC
                               1829 Reisterstown Road, Suite 200
                               Baltimore, Maryland 21208
                               (410) 539-6633

                               ***Attorneys for Plaintiffs***

**CERTIFICATE OF SERVICE**

THIS IS TO CERTIFY that on this 8th day of December, 2023, a copy of Plaintiff's Opposition to Defendants' Motion for Summary Judgment, proposed order, and attached exhibits, were served via the CM/ECF filing system upon all counsel and parties of record.

A paper copy is being sent to Judge Abelson per Local Rule 105(a).


                                        */s/ Paul D. Bekman*
                                        PAUL D. BEKMAN (00019)