IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| FRANK RODAS,<br>    *Plaintiff*,<br><br>v.<br><br>FOUNTAINEBLEAU CORP. d/b/a<br>CLARION RESORT FOUNTAINBLEU,<br>et al,<br><br>    *Defendants* | Civil Action No.<br>22-CV-2601-ABA |

**MEMORANDUM OPINION**

Plaintiff Frank Rodas slipped and fell when he stepped into a hotel bathtub, and has sued the owners and operators of the hotel, Fontainebleau Corporation and LPB O.C. Hotel Limited Partnership (collectively, "Defendants"), for negligence. He contends the tub was defective (*i.e.*, unreasonably slippery) because it had not been properly cleaned and/or lacked an anti-slip coating (*e.g.*, a bathmat, non-skid strips, etc.). Defendants have moved for summary judgment, arguing Mr. Rodas has proffered no expert evidence as to the applicable standard of care owed to him and that, in any event, the risk of falling was open and obvious, or voluntarily assumed. ECF No. 46-1 ("Def. Mem.").

Having considered Defendants' motion, along with Mr. Rodas' opposition, ECF Nos. 49-1 ("Pl. Mem.") and Defendants' reply, ECF No. 50 ("Def. Reply"), and no hearing being necessary, *see* Loc. R. 105.6 (D. Md. 2016), the Court denies Defendants' motion. Expert testimony is not required in these circumstances, and genuine disputes of material fact preclude summary judgment.

1

**BACKGROUND**[1]

In June 2020, Mr. Rodas and his now-wife, Karen Selman, left their home in New Jersey for Maryland to begin a two-week vacation. *See* Pl. Mem. Ex. 1, ECF No. 49-1 ("Selman Dep.") at 8-9, 12, 14. As they had every summer for nearly a dozen years, the couple rented a room at the Clarion Resort Fontainebleau Hotel ("Clarion") in Ocean City. *See* Pl. Mem. Ex. 2, ECF No. 49-2 ("Rodas Dep.") at 18:21-19:3. They booked one of the hotel's "cabanas," which were the highest-rated suites at the Clarion. *See* Pl. Mem. Ex. 3, ECF No. 49-3 ("Elman Dep.") at 13:4-11. The couple's two-floor cabana included access to an indoor pool and a balcony view. *Id.* at 13:12-21; Selman Dep. at 19:14-20. There was a half bathroom on the first floor of the suite, and a full bathroom with a combined shower-bathtub on the second floor. Selman Dep. at 16:16-17:7; Rodas Dep. at 20:19-23, 25:13-26:3. The couple checked in, went out to eat, and returned to their cabana to relax together for the rest of the evening. Selman Dep. at 15:11-12, 20:3-6, 19-22; Rodas Dep. at 24:12-20.

According to Ms. Selman, when she tried to use the bathtub the following day, she "noticed the tub was filthy," Selman Dep. at 21:8-9, and appeared a "brownish color, gray." *Id.* at 19:24-21:12. Mr. Rodas described the tub this way: "It was dirty. It was sandy. It was black. It was just filthy. It was disgusting." Rodas Dep. at 30:7-9. Mr. Rodas did not initially consider the tub "[un]safe or . . . dangerous," but noticed it had a "smooth" surface and lacked a bathmat. Rodas Dep. at 30:11; 31:24-32:22; *accord* Selman Dep. at 28:14-22, 30:19-20. Ms. Selman testified that, unlike the bathtubs in her previous stays at the Clarion, she believed this one had

---

[1] Because Defendants have moved for summary judgment, the Court must view the evidence in the light most favorable to Mr. Rodas, the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-67 (2014), and draw all reasonable inferences in his favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The facts are set forth with this standard in mind.

no anti-slip strips. Selman Dep. at 31:2-10. When asked at deposition whether, before the fall at issue, he believed the tub was dangerous, Mr. Rodas responded, "I'm not a bathtub expert, so I don't know." Rodas Dep. 31:4-5. He later elaborated that when he first saw the tub, it did not occur to him that the tub was unsafe. Rodas Dep. at 30:12-13; 31:4-5; 32:14-22.

Mr. Rodas and Ms. Selman did not attempt to clean or use the tub, but called the hotel's front desk to request that the tub be cleaned. Rodas Dep. at 30:14-19, 39:8-12; Selman Dep. at 22:5-23:8. The Clarion staff informed them there would be no cleaning services provided before check-out. Selman Dep. at 23:3-8. The staff further explained that contractors had cleaned the room two days before and, due to COVID-19 protocols, daily housekeeping had been suspended. *Id.*; Elman Dep. at 20:14-23:13. The couple requested another room, but no other cabana was available. Selman Dep. at 23:12-22. Although Ms. Selman called to complain several more times in the days that followed, the Clarion did not send anyone to clean the tub, and Mr. Rodas and Ms. Selman avoided using it entirely, for the first six days of their stay. Selman Dep. at 26:9-11; 29:21-24; 37:16-20. Ms. Selman went to the salon to wash her hair, and both she and Mr. Rodas relied on the exposed public showers near the pool to rinse themselves. *Id.* at 27:6-16.

Six days into their stay, Mr. Rodas relented, deciding to shower in the hotel room despite the condition of the tub. Rodas Dep. at 67:15-23. He recalled that he was "hot[,] . . . sweating and . . . dirty" by then. *Id.* at 38:4-6. But "a second" after stepping into the tub he slipped and fell, striking his head, shoulder, back, and foot. *Id.* at 42:18. Mr. Rodas described what happened as follows:

> I was in the bathroom, one leg into the bathtub. I grabbed onto the wall so I wouldn't fall. When I turned around to turn the water on, as soon as I turned the water on, as soon as I let go of the wall, my feet went one way and my body went the other way.

*Id.* at 39:24-40:7.

3

When asked what prompted him to "grab[]" the wall as he stepped into the tub—before slipping or falling—Mr. Rodas explained that doing so is a "habit," and responded, "I always grab the wall when I go into the shower, even at my house." *Id*. at 41:3-8. When asked how the tub floor felt on his foot as he stepped inside, Mr. Rodas responded, "It was dirty. I felt the sand." *Id.* at 42:8-12. He also stated the tub's surface felt "slippery." *Id.* at 42:13-14.

The couple took pictures of the tub after the incident, and filed a report with the hotel. *Id*. at 47:12-16; Selman Dep. at 39:19-22. Mr. Rodas later pursued medical attention for the injuries he sustained in his fall. Rodas Dep. at 42-43, 53-55, 69-72, 75-75-81, 84-87.

## PROCEDURAL HISTORY

Mr. Rodas filed his original complaint alleging Defendants' negligence in October 2022. *See* ECF No. 1. He filed an amended complaint in December 2022, to correct the named parties to the action, ECF No. 19, but alleging the same operative facts and claims. *See* ECF Nos. 15 & 18. Defendants filed their responsive pleadings the following week, denying liability and asserting fourteen affirmative defenses. ECF No. 20. Discovery closed in October 2023. ECF No. 45. Defendants then filed the instant motion for summary judgment, ECF No. 46, which Mr. Rodas opposed. ECF No. 49. Defendants filed a reply in January 2024. ECF No. 50.

## SUMMARY JUDGMENT STANDARD

Summary judgment is governed by Federal Rule of Civil Procedure 56(a). A party seeking entry of summary judgment must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the

suit under the governing law.'" *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The inquiry on a motion for summary judgment is, in essence, whether there is a legitimate disagreement over a controlling issue that "may reasonably be resolved in favor of either party." *Id*. at 250. As noted above, the Court must consider the facts and all reasonable inferences in the light most favorable to the party opposing the summary judgment motion. *Scott*, 550 U.S. at 378. Generally, "when there is a close question and 'reasonable minds could differ' when weighing the facts against the law, then summary judgment is inappropriate." *Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 208 (4th Cir. 2014) (quoting *Paroline v. Unisys Corp.*, 879 F.2d 100, 105 (4th Cir. 1989)).

## DISCUSSION

Mr. Rodas alleges that Defendants were negligent in that they "failed to inspect the bathtub; failed to maintain the bathtub free from defects; failed to provide safety strips, non-skid strips or a bath mat in the tub; failed to warn [Mr. Rodas] of the defective conditions of the bathtub;" and "failed to provide a safe and adequate bathtub." ECF No. 19 ¶ 7. Defendants argue his claim cannot proceed as matter of law for three reasons: (1) Mr. Rodas has not designated a standard-of-care expert, and proving the applicable standard of care here requires expert evidence; (2) Defendants had no duty to warn Mr. Rodas of the tub's conditions because those conditions were "open and obvious"; and (3) Mr. Rodas assumed the risk of slipping when he stepped into a noticeably dirty bathtub.

**A.**     **Is expert testimony necessary for Plaintiff to prove the standard of care?**

Mr. Rodas' claim for negligence is controlled by Maryland law. A plaintiff seeking to recover for negligence in Maryland must prove "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff

5

suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 212-13, 60 A.3d 1, 10 (2013) (citation and emphasis omitted).

"[T]he duty of care owed by an owner or occupier of a premises is a function of his legal relationship to the person entering on the premises." *Garner v. Supervalu, Inc.*, 396 F. App'x 27, 29 (4th Cir. 2010); *accord Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 387, 693 A.2d 370, 374 (1997). "Business invitees" are "visitors invited to enter the premises in connection with some business dealings with the possessor." *Rhaney v. Univ. of Maryland E. Shore*, 388 Md. 585, 602, 880 A.2d 357, 367 (2005). A business owes its invitees "the duty to use ordinary care to have its premises in a reasonably safe condition." *Norris v. Ross Stores, Inc.*, 159 Md. App. 323, 335, 859 A.2d 266, 273 (2004). While a business is "not an insurer" of its customers' safety," *id.*, it must "use reasonable and ordinary care to keep the premises safe for the invitee and to protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for the invitee's own safety[,] will not discover." *Gillespie v. Ruby Tuesday, Inc.*, 861 F. Supp. 2d 637, 641 (D. Md. 2012) (citing *Deboy v. City of Crisfield*, 167 Md. App. 548, 555, 893 A.2d 1189 (2006), alterations omitted). "The duties of a business invitor thus include the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers." *Rybas v. Riverview Hotel Corp.*, 21 F. Supp. 3d 548, 560 (D. Md. 2014) (citing *Tennant*, 115 Md. App. at 388).

Defendants argue that, without expert testimony, Mr. Rodas cannot prove they breached their duty of "reasonable and ordinary care to keep the premises safe for the invitee," *Gillespie*, 861 F. Supp. 2d at 641, because expert testimony is necessary "to establish what constitutes 'reasonable care' for a hotel under the circumstances." Def. Mem. at 1. Relying on two cases,

Defendants assert that, without the benefit of expert testimony, the average juror will not know what constitutes "reasonable care" for hotel owners and operators with respect to hotel room bathtubs. *Id*. at 10 (citing *Haney v. Marriott Int'l, Inc.*, No. CIV. A. 05-2501 JDB, 2007 WL 2936087 (D.D.C. Oct. 9, 2007) and *Leavins v. Nayan Corp.*, 344 Ga. App. 417, 421, 810 S.E.2d 324 (2018)).

Expert testimony is generally admissible "when it will 'help the trier of fact to understand the evidence or to determine a fact in issue.'" *Scinto v. Stansberry*, 841 F.3d 219, 230 (4th Cir. 2016) (quoting Fed. R. Evid. 702(a)). But "[w]hen laypersons are just 'as capable of comprehending the primary facts and of drawing correct conclusions from them' as are experts," expert testimony is not necessary, and in some circumstances "may properly be excluded." *Id*. (quoting *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962)). Maryland law applies essentially the same standard. *See, e.g.*, *Steamfitters Local Union No. 602 v. Erie Ins. Exchange*, 469 Md. 704, 737, 233 A.3d 59, 78 (2020) ("Expert testimony is *not* required for matters that would be within the common knowledge of an average person."); *Johnson v. State*, 457 Md. 513, 530, 179 A.3d 984, 997 (2018) ("Expert testimony is *required* 'only when the subject of the inference [to be drawn by the jury] is so particularly related to some science or profession that it is beyond the ken of the average layman.'") (quoting *Bean v. Dep't of Health & Mental Hygiene*, 406 Md. 419, 432, 959 A.2d 778, 786 (2008)).

Is assessing whether the tub in Mr. Rodas' hotel room was *unreasonably* dirty or slippery "beyond the ken of the average layman," *Johnson*, 457 Md. at 530, in the context of this case? The answer is no, at least for purposes of Defendants' summary judgment motion.[2] Given the

---

[2] The Court does not prejudge whether Defendants will be permitted to call one or more experts at trial. The fact that a jury could find for Plaintiff without expert testimony does not necessarily

simplicity of Mr. Rodas' theory of liability, there is adequate evidence in the record from which a reasonable jury will be able to determine whether the hotel acted reasonably under the circumstances. *See, e.g.*, *Chalifa v. Mayor & City Council of Baltimore*, 986 F.2d 1412 (4th Cir. 1993) (unpublished table decision) ("[A] jury should be competent to decide whether the defendant maintained the footbridge in an unreasonably dangerous condition."); *Johnson-Howard v. AECOM Special Missions Servs., Inc.*, 19-cv-0614-JRR, 2023 WL 6216604, at *7 (D. Md. Sept. 25, 2023) ("[T]here is nothing to suggest that the standard of care Defendants must exercise in cleaning/mopping the lobby floor is beyond the knowledge and experience of the average layman.").

The two hotel bathtub cases Defendants cite to support their argument that expert testimony is required do not suggest otherwise. In *Haney*, there was no evidence—factual or expert—to support the plaintiffs' contention that the bathtubs were unreasonably dirty or slippery. *See Haney*, No. CIV. A. 05-2501 JDB, 2007 WL 2936087, at *4 ("[P]laintiff has not put forward any evidence . . . concerning the physical characteristics of the bathtub on the date of the accident."). And in *Leavins*, although one of plaintiff's witnesses testified she "believed that the bathtub was 'slippery' and/or 'slick,'" there was no evidence that anything distinguished that tub from any other hotel bathtub. *Leavins*, 344 Ga. App. at 421 ("Leavins proffered no evidence that the bathtub presented a hazard other than her fall and her and her daughter's testimony that they believed that the bathtub was 'slippery' and/or 'slick[.]'").

In contrast, here, there is evidence from which a reasonable jury could conclude, without expert testimony, that the bathtub in Mr. Rodas' hotel room had a defective condition and

---

preclude Defendants from relying on standard-of-care expert testimony in support of their case (assuming properly and timely disclosed and the expert's testimony otherwise complies with Federal Rule of Evidence 702).

8

Defendants breached their duty to keep the tub reasonably safe using ordinary care. There is evidence that there was dirt, sand, or some other foreign debris in the tub, which Mr. Rodas contends a reasonable hotel operator would have cleaned, either before he and Ms. Selman arrived, or after they requested another cleaning. Rodas Dep. at 30:5-9; Selman Dep 21:22-23:11, 23:23-24:7, 25:2-10. The incident happened the first time Mr. Rodas tried to use the tub. Rodas Dep. at 36:3-6. There is evidence that its surface was smooth, and that its bottom lacked non-slip strips or coating. *Id*. at 31:24-32:12. Ms. Selman contends that non-slip strips or coating were in other tubs at the Clarion, implying that those safety features had deteriorated or were missing from *this* tub. Selman Dep. at 31:2-10. Moreover, there is evidence that Ms. Selman contacted the hotel staff multiple times to complain about the conditions of the tub and request its cleaning, but the hotel declined because of its COVID-related no-daily-cleaning policy. *Id*. at 26:9-11; 29:21-24; 37:16-20.

      Of course, to prevail at trial, Mr. Rodas will have to convince a jury this evidence proves that Defendants breached their duty to "use reasonable and ordinary care to keep the premises safe," and to "protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for the invitee's own safety[,] will not discover." *Gillespie*, 861 F. Supp. 2d at 641. A jury may decide that Defendants acted as any reasonable hotel operator would under the circumstances—particularly in the height of a pandemic, when minimizing in-person interaction was a priority. A jury may also decide that not having an expert to educate it about bathtub surfaces, or about hotel cleaning protocols during the pandemic, or the like, renders Mr. Rodas unable to meet his burden of proof. But at this stage of the action, his failure to designate an expert witness is not fatal as a matter of law, and Defendants are not entitled to summary judgment on these grounds.

### B.     Open and Obvious Danger

Defendants next argue that Mr. Rodas is barred from recovery because falling is an open and obvious risk of showering, particularly in a combined shower-tub, and thus Defendants had no duty to warn Mr. Rodas of that risk. Def. Mem. at 12-13. But because there is evidence from which a reasonable jury could conclude that an unforeseeable and excessive risk existed in these circumstances, summary judgment is not proper.

An open and obvious condition is one that is apparent and recognizable to "a reasonable person in the position of a visitor, exercising ordinary perception, intelligence, and judgment." *Coleman v. United States*, 369 F. App'x 459, 462 (4th Cir. 2010) (citing 65A C.J.S. Negligence § 639 (2009)); *see also Tennant*, 115 Md. App. at 388. When encountering such conditions, the invitee is responsible for exercising basic care for his or her own safety, including "a duty to look and see what is around." *Id*. (citing *Tennant*, 115 Md. App. at 389). Whether a defect is open and obvious is typically a question reserved for the factfinder. *C&M Builders, LLC v. Strub*, 420 Md. 268, 299, 22 A.3d 867, 885 (2011). Indeed, the Court may decide the issue only "where it is clear that any [reasonable] person [in plaintiff's position] must have understood the danger." *Id*. (citing Prosser and Keeton on Torts, § 68 (5th ed. 1984)). "There is no exact test or formula by which it may be determined, as a matter of law, that a condition is so open and obvious that an invitee is charged with knowledge of its existence and consents to the risk." *Gellerman v. Shawan Rd. Hotel Ltd. P'ship*, 5 F. Supp. 2d 351, 353 (D. Md. 1998). Rather, each case depends on its own facts and circumstances. *Id*. *See also Bonura v. Univ. of Maryland Coll. Park*, No. 0043, 2021 WL 1157939, at *5 (Md. Ct. Spec. App. Mar. 26, 2021) (discussing *Gellerman* analysis with approval).

Defendants argue that Mr. Rodas' admissions establish, as a matter of law, that the risk of slipping in the bathtub was "open and obvious," noting specifically his acknowledgement that, before he fell, he saw that the tub lacked non-slip strips or a bathmat, and was dirty, with sand or some other substance on its bottom. Rodas Dep. at 30:5-10; 30:20-22; 31:24-32:2; 32:5-13; 35:23-36:2. Defendants also cite three cases they contend stand for the proposition that bathtub slipperiness is an open and obvious condition. Def. Mem. at 13-14 (citing *Jones v. Abner*, 335 S.W.3d 471, 476 (Ky. Ct. App. 2011); *Kutz v. Koury Corp.*, 93 N.C. App. 300, 301, 377 S.E.2d 811, 812 (1989); and *Dempsey v. Alamo Hotels, Inc.*, 418 P.2d 58, 61 (N.M. 1966), *overruled by Williamson v. Smith*, 491 P.2d 1147 (N.M. 1971)).

A reasonable jury could very well agree with Defendants and find, based on this evidence, that insofar as the tub was unreasonably slippery, that risk was open and obvious (or that stepping into the tub without cleaning it first constituted contributory negligence, *see* ECF No. 20 at 4 (asserting contributory negligence defense)). But a reasonable jury also could conclude that the risk was not open and obvious. Viewed in the light most favorable to Mr. Rodas, the nonmoving party, the evidence of his observations only establishes that the conditions of his tub (whether it was dirty, and whether the non-slip strips had worn away) were visible. This evidence does not establish—as a matter of law—that he knew, and appreciated, that stepping into the tub entailed an unreasonable risk of slipping. *See, e.g.*, *Six Flags Am., L.P. v. Gonzalez-Perdomo*, 248 Md. App. 569, 583–84, 242 A.3d 1143, 1152 (2020) (holding that a visible condition can present an undiscoverable risk of harm, and explaining, "Although we agree with Six Flags that the evidence overwhelmingly established that the bridge was openly and obviously wet, we disagree with Six Flags that the dangerous condition caused by the wetness was so clearly open and obvious as to permit no reasonable factfinder to conclude

otherwise."). Indeed, Mr. Rodas testified that he had never used a tub in the conditions presented here, and notwithstanding his observations he did not believe the bathtub was dangerous. Rodas Dep. at 67:15-23. A reasonable jury here could conclude there is a difference between Mr. Rodas seeing a condition, on one hand, and appreciating its danger, on the other. Although a reasonable jury could find that the risk *was* open and obvious, a reasonable jury could also reach the opposite conclusion.

Nor are Defendants' cited cases discussing bathtub slipperiness applicable here. None of these opinions, all non-controlling, involved the presence of a foreign substance, such as the sand that Mr. Rodas and Ms. Selman contend coated the bottom of the tub in their cabana. In fact, the uncontradicted evidence of these cases established that those tubs were no more perilous than ordinary bathtubs. The plaintiffs in *Jones* and *Kutz*, unlike Mr. Rodas, had previously used the tubs that they complained of without incident. *Jones* 335 S.W.3d at 476; *Kutz* 93 N.C. App. at 304. And the tub in *Dempsey*, unlike this one (again, with the evidence viewed in Mr. Rodas' favor), "was clean and dry prior to the time plaintiff turned on the water in preparation for his shower." 418 P.2d at 61 (N.M. 1966).

Finally, Defendants argue that when Mr. Rodas contends he can prove Defendants' negligence without expert testimony—*i.e.,* that lay witnesses can establish whether a reasonable hotel operator in Defendants position would have maintained or cleaned the tub differently—he necessarily concedes that the risk of using the tub was open and obvious. *See* Def. Reply at 5-8. But that is a non-sequitur. Both of his contentions can be true: that lay witnesses can establish whether Defendants acted unreasonably, as discussed above, and that any unreasonable risk of slipping in the tub was not open and obvious (or, as discussed below, that Mr. Rodas did not voluntarily assume the risk at issue).

Because there is evidence from which a reasonable jury could go either way on whether the tub in Mr. Rodas' room posed an unreasonable risk of slipping (if any), Defendants are not entitled to summary judgment on their defense that the conditions of the tub were open and obvious.

C.     **Assumption of Risk**

In addition to arguing that the risk to Mr. Rodas of falling was "open and obvious," Defendants argue they are entitled to summary judgment on assumption-of-risk grounds. But for most of the same reasons set forth above, whether Mr. Rodas, upon stepping into the tub, assumed the risk of falling, is also a jury issue.

In Maryland, "assumption of the risk is an affirmative defense, which rests upon the plaintiff's consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of harm from a particular risk." *ADM P'ship v. Martin*, 348 Md. 84, 102, 702 A.2d 730, 739 (1997) (quoting *Gibson v. Beaver*, 245 Md. 418, 421, 226 A.2d 273, 275 (1967). Assumption of risk, if proven, is a complete bar to recovery. *Id*. at 91. To prove assumption of the risk, a defendant "must show that the plaintiff: (1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger." *Id*. "The issue of assumption of the risk rests upon the plaintiff's subjective knowledge." *Poole v. Coakley & Williams Const., Inc*., 423 Md. 91, 115, 31 A.3d 212, 226 (2011). Because assumption of risk is an affirmative defense, and because of the fact-intensive nature of the inquiry, "what the plaintiff actually knew, understood[,] and appreciated . . . is ordinarily left to the jury to resolve." *Id*. Summary judgment based on assumption of risk is only proper when "the undisputed evidence and all permissible inferences therefrom *clearly* establish that the risk of danger was *fully* known to and *understood* by the plaintiff." *Thomas v. Panco Mgmt. of Maryland, LLC*, 423 Md. 387,

13

398, 31 A.3d 583, 590 (2011) (quoting *Schroyer v. McNeal*, 323 Md. 275, 283, 592 A.2d 1119, 1123 (1991)) (emphasis and brackets in original).

The evidence here neither proves as a matter of law that Mr. Rodas had actual knowledge of the risks that he claims existed, nor forecloses the possibility that a reasonable jury could determine that the risks presented here were unreasonable, undiscoverable, or not voluntarily accepted. Defendants contend that evidence of the tub's visible conditions, along with Mr. Rodas' testimony describing the circumstances of his fall, collectively establish that "he appreciated the risk of falling in the shower as he entered it on the day of the incident." Def. Reply at 9. Particularly telling, according to Defendants, are his statement "I grabbed onto the wall so I wouldn't fall," Rodas Dep at 40:1-2, and his acknowledgement that the tub floor felt "slippery." *Id*. at 42:13-14. But viewing that testimony in the light most favorable to Mr. Rodas, as the Court must at this stage, that evidence only establishes that he understood that the tub was dirty. That understanding does not establish "knowledge" for the purposes of assumption of risk.

Knowledge in the context of an assumption-of-risk defense means Mr. Rodas "must not only be aware of the facts which create the danger, but must also appreciate the danger itself and the nature, character, and extent which make it unreasonable." *Imbraguglio v. Great Atl. & Pac. Tea Co*., 358 Md. 194, 217, 747 A.2d 662, 675 (2000) (quoting Restatement (Second) of Torts § 496D (1965)). Even if Mr. Rodas understood that bathtubs are generally at least somewhat slippery, and even if he saw that there was sand or some other substance in this tub, that does not establish, particularly as a matter of law, that he "appreciate[d] the danger itself and the nature, character, and extent which ma[d]e it unreasonable." *Id.* Instead, those issues are disputed. As previously noted, Mr. Rodas testified that he did *not* know the tub was slippery. Rodas Dep. at 30:12-13; 31:4-5; 32:14-22. He also testified that he *always* braces himself against the wall when

14

he enters a shower, *i.e.*, that grabbing the wall while stepping into the tub did not reflect an awareness of an unreasonable risk of slipping. *Id.* at 40:21-41:8. A reasonable jury could conclude that the evidence shows only that Mr. Rodas expected this tub to be as slippery as any other tub, and he did not appreciate what he now contends were its *unreasonably* slick conditions.

The presence of genuine disputes as to Defendants' assumption-of-risk defense is further confirmed by the fact that a "plaintiff's acceptance of a risk is not voluntary if the defendant's tortious conduct has left him no reasonable alternative course of conduct in order to . . . exercise or protect a right or privilege of which the defendant has no right to deprive him." *ADM P'ship*, 348 Md. at 93 (quoting Restatement (Second) of Torts § 496E). Defendants assert that Mr. Rodas "had numerous choices" to clean himself on the day of the incident, including using the outdoor shower by the pool and the sink in his hotel room. Def. Reply at 10. But the hotel provided a tub in the room reserved for Mr. Rodas and Ms. Selman, and owed them a duty to keep that tub in reasonably safe condition, using ordinary care. Defendants' alleged failure to do so did not necessarily require Mr. Rodas to forfeit his ability to shower in his hotel room and any alternatives, including those proposed by Defendants, needed to be reasonable. Whether he voluntarily accepted the risk of using the tub is therefore a matter for a jury.

For these reasons, the undisputed facts do not establish as a matter of law that Mr. Rodas assumed the risk of danger. Accordingly, summary judgment is not appropriate on these grounds either.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion for summary judgment (ECF No. 46). The parties shall confer and, within two weeks, file a status report setting forth the parties' estimate for the length of trial and at least five alternative dates for trial.

Date:   July 16, 2023                                   _____/s/_____
                                                        Adam B. Abelson
                                                        United States Magistrate Judge